# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK E. ANDREW, | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : |
| | : NO. 16-3851 |
| TODD BUSKIRK, et al., | : |
| | : |
| Defendants. | : |

## MEMORANDUM

STENGEL, C.J.                                                                           August 14, 2017

Frank Andrew filed this civil rights action against the warden, the intake administrator, and an intake specialist at the Northampton County Department of Corrections, alleging Eighth Amendment and false imprisonment claims. According to Andrew, the prison officials improperly calculated his credits, which were based on multiple sentences from multiple counties, thereby causing him to remain in custody for 162 days past the expiration of his sentence. He also alleges that they failed to act appropriately in response to his claims that the credits were owed. The defendants filed a motion for summary judgment on the entirety of the complaint, while Andrew moved for summary judgment as to his claims against the intake administrator and intake specialist only.[1] For the reasons that follow, I will grant the defendants' motion for summary judgment and deny Andrew's motion for summary judgment.

---

[1] As stated at oral argument, Andrew did not move for summary judgment against the warden because he believes a genuine issue of material fact remains as to the warden's involvement in the decisions regarding Andrew's credits.

## I. FACTUAL BACKGROUND

### A. **Andrew's Charges, Sentences, and Periods of Incarceration**[2]

Andrew had numerous contacts with the criminal justice system between 2010 and 2014. These various arrests, charges, sentences, and periods of incarceration, parole, and probation in Montgomery, Bucks, and Northampton Counties are detailed below:

- In 2010, Andrew was arrested in Montgomery County on various charges, and was released on bail.

- In September 2010, Andrew pled guilty to various charges in Bucks County and was sentenced to 11½ to 23 months' incarceration to be followed by two years' probation. At the time of this plea, he was being housed in Northampton County jail on separate charges.

- In February 2011, Andrew pled guilty to charges in Northampton County and was sentenced to 11½ to 23 months' incarceration, to run concurrently with the 2010 Bucks County sentence.

- The Montgomery, Bucks, and Northampton County sentences ran concurrently, and on August 10, 2011, Andrew was released on parole from Northampton County after serving 11½ months. At that time, he was sent to Bucks County, because he had not completed the minimum sentence on the Bucks County charges. He was then paroled from Bucks County in September 2011.

- In January 2012, Andrew received a parole violation in Bucks County and was released on parole in February 2012 after serving thirty days.

---

[2] The details of Andrew's criminal history are taken from the Defendants' Statement of Material, Uncontested Facts ("DSUMF"), except where otherwise noted.
Andrew also spent time on probation and in custody due to arrests for conduct which occurred after he was released from Northampton County Jail. (See DSUMF ¶¶ 47–53.)

2

- On June 5, 2012, Andrew was arrested in Bucks County on new charges. As a result, he also violated both his Bucks County parole and his Montgomery County parole.

- In November 2012, Andrew pled guilty to the Bucks County charges and was sentenced to two years' probation. He was also awaiting hearings on parole violations. (Defs.' Resp. Opp'n to Pl.'s Mot. Summ. J. ¶ 18.)

- In January 2013, Andrew was found in violation of his Bucks County parole, and was sentenced to the balance of his Bucks County sentence. He received credit for time served from June 5, 2012 to January 23, 2013. At that time, Andrew was transported to Montgomery County, where he was held for one week pending a hearing on his parole violation. He was then transported back to Bucks County and then to Northampton County.

- At his parole violation hearing in Montgomery County, Andrew was found guilty and was sentenced to serve the remainder of his sentence, with credit for time served from June 5, 2012 to January 18, 2013.

- In late January or early February 2013, Andrew was transferred to Northampton County, and on March 1, 2013, he was found guilty of violating his Northampton County parole. He was given work release and was to be re-paroled after thirty days. His Violation of Parole ("VOP") sheet stated "If entitled, will receive credit for time served." Andrew was released approximately two weeks after the hearing, and received credit for time served between the time of his detention and the time of his parole violation hearing.

- In December 2013, Andrew violated his parole. A hearing on the violation occurred on January 2, 2014 in Buck County. The judge in Bucks County decided to defer sentencing for ninety days.

- Andrew then had a parole violation hearing in Northampton County on January 10, 2014. The Northampton County judge revoked Andrew's parole and sentenced him to the balance of his maximum sentence. The sentencing sheet stated "Violator. Serve balance. Eligible for immediate work release. Remanded to NCP. Concurrent to all other sentences incl- Bucks Cty." The Sentencing Sheet did not refer to credit for time served in any of the institutions in which Andrew had been incarcerated. Pursuant to the Sentencing Sheet, Andrew was remanded to Northampton County Jail to serve the remainder of his sentence.

Thus, as of January 2014, Andrew was incarcerated in the Northampton County Jail. It is during this period of incarceration that his claims arose.

### B. **Andrew's Grievances Regarding Credits**[3]

On March 10, 2014, while incarcerated in the Northampton County Jail, Andrew filed a grievance claiming that he should have received credit for time served in Bucks County Prison. The grievance coordinator informed Andrew that the intake division had been asked to review his case file. He also advised Andrew that the prison had no documentation from Northampton or Bucks County directing them to give him those credits, but that if Andrew had such documentation he should provide it. The intake division reviewed Andrew's file, and informed the grievance coordinator that in their view, Andrew was seeking credit for time spent in Bucks County on an unrelated charge for which he received a sentence of probation. The intake division also told Andrew that he would not get credit for time served in another county under these circumstances, unless there was a specific court order to that effect, and that no such order was present in his file.

---

[3] The details of Andrew's grievances and actions taken in response come from the Defendants' Statement of Material, Uncontested Facts.

4

Andrew filed another grievance regarding the credit issue on March 18, 2014. The response was substantively the same, and added that if Andrew believed he was owed additional credit, he should have his attorney provide the jail with documentation from the court to that effect. Andrew sought to have his Bucks County sentencing information sent to the jail, and subsequently filed an appeal of his grievance. A deputy warden responded to the appeal with a similar response, and advised Andrew to have his attorney provide court documentation in support of his claim regarding credits.

In June 2014, Andrew hired an attorney who negotiated with the district attorney, who in turn spoke with a judge who issued an order awarding Andrew credit for the time he spent in Bucks County. That order is dated June 13, 2014. Upon receipt of the order, Northampton County Jail released Andrew.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that shows the absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (internal citation omitted). Rather, the court

must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citations omitted).

The moving party must establish an absence of a genuine issue of material fact, but it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Instead, it can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. The mere existence of some evidence in support of the non-movant is not sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find in the non-movant's favor on that issue. Anderson, 477 U.S. at 249–50 (internal citations omitted).

The summary judgment rules do not apply any differently where there are cross-motions pending. Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). "'Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" Id. (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## III. DISCUSSION

After careful consideration of the parties' arguments and the evidence in the record, I find that no genuine issues of material fact remain with respect to the "over-detention" claim, and that the defendants are entitled to summary judgment on the entirety of Andrew's complaint.

### A. **<u>Andrew's Claim That He Was Entitled to Credits</u>**

"An inmate's detention after his term of imprisonment can, under certain circumstances, constitute cruel and unusual punishment, in violation of the Eighth Amendment." <u>Wharton v. Danberg</u>, 854 F.3d 234, 241 (3d Cir. 2017) (citing <u>Montanez v. Thompson</u>, 603 F.3d 243, 250 (3d Cir. 2010)). Here, Andrew asserts that he was detained in the Northampton County Jail for 162 days beyond the date that he should have been released from custody.

Andrew's Eighth Amendment and false imprisonment claims stem from his belief that he was entitled to credit on his Northampton County jail time for the time he spent in Bucks County Jail from June 5, 2012 to January 23, 2013. Andrew was incarcerated in Bucks County for that time period because of new Bucks County charges,[4] for which he received a sentence of probation and time served. Specifically, he asserts that the days he was in custody should have been applied to the balance of a previously incurred Northampton County sentence—which had been ordered to run concurrently to a different, older Bucks County sentence—that he was required to complete as a result of violating his Northampton County parole.[5]

---

[4] As noted above, Andrew was also awaiting hearings in Bucks County and Montgomery County on parole violations.

[5] The Pennsylvania statute governing time served does not support Andrew's argument. It provides that courts
> shall give credit as follows:
> (1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall

7

Essentially, Andrew argues that, because his new Bucks County charge resulted in a non-custodial sentence of time served and probation, credit for the time he spent awaiting sentencing on that charge should instead be counted towards a 2011 Northampton County sentence. He bases this argument on the fact that the 2011 Northampton County sentence was ordered to run concurrently with the 2010 Bucks County sentence. But this outcome would require a finding that (1) he should first get credit for time served for one sentence, and in addition receive credit for that same period of incarceration towards a different sentence; and (2) the "concurrent" status of the original two concurrent sentences somehow included a different Bucks County sentence that was not imposed until 2012. Tellingly, Andrew does not point to any case law that would support his interpretation of how credits should be awarded or the meaning of "concurrent" that he proposes.

---

        include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.
        (2) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody under a prior sentence if he is later reprosecuted and resentenced for the same offense or for another offense based on the same act or acts. This shall include credit in accordance with paragraph (1) of this section for all time spent in custody as a result of both the original charge and any subsequent charge for the same offense or for another offense based on the same act or acts.
        (3) If the defendant is serving multiple sentences, and if one of the sentences is set aside as the result of direct or collateral attack, credit against the maximum and any minimum term of the remaining sentences shall be given for all time served in relation to the sentence set aside since the commission of the offenses on which the sentences were based.
        (4) If the defendant is arrested on one charge and later prosecuted on another charge growing out of an act or acts that occurred prior to his arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time spent in custody under the former charge that has not been credited against another sentence.

42 Pa. Con. Stat. Ann. § 9760. None of these subsections supports Andrew's claims.

In light of the Pennsylvania statutory provisions regarding time served and the facts of Andrew's case, no reasonable jury would find that "concurrent" means concurrent to a future sentence imposed for a crime that had not yet been committed, or that Andrew should receive credit against a non-concurrent sentence where he had already been awarded credit for time served on his sentence. Thus, no reasonable jury would find that Andrew had been over-detained. Accordingly, the defendants are entitled to summary judgment on Andrew's Eighth Amendment and false imprisonment claims.

Because there was no over-detention, I need not address Andrew's argument that the defendants were deliberately indifferent to his claims that he should have been released prior to the time that Northampton County Jail received the June 13, 2014 court order. Similarly, I do not address the defendants' argument that they are entitled to qualified immunity.

## IV. CONCLUSION

In light of the foregoing, I find that the defendants are entitled to summary judgment as to the entirety of Andrew's complaint, and their motion is therefore granted. Andrew's motion for summary judgment is denied.

An appropriate Order follows.